NO. 24-12999-JJ

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE 11TH CIRCUIT

_____

L. LIN WOOD,
Defendant/Appellant,


v.


NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON,
Plaintiffs-Appellees/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO. 1-22-cv-01073-MLB


_____


REPLY BRIEF OF APPELLANT


_____


R. Christopher Harrison, Esq.          John P. Exum, Jr., Esq.
**DOWNEY & CLEVELAND, LLP**          **JOHN EXUM LAW, LLC**
288 Washington Avenue                2625 Piedmont Rd NE, Ste 56-480
Marietta, GA 30060-1979              Atlanta, GA 30324
Tel: 770-422-3233                    Tel: 252-560-5325
Email: harrison@downeycleveland.com  Email: jexum@johnexum.com


ATTORNEYS FOR APPELLANT

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1. Brown, Hon. Michael L. (United States District Court Judge for the Northern District of Georgia)

2. Beal, Andrew (Counsel for Plaintiffs-Appellees)

3. Brown, Milinda (Counsel for Plaintiffs-Appellees)

4. Beal, Sutherland, Berlin & Brown, LLC (Counsel for Plaintiffs-Appellees)

5. Grunberg, Jonathan (Plaintiff-Appellee and Counsel for Plaintiffs-Appellees)

6. Wade, Nicole Jennings (Plaintiff-Appellee and Counsel for Plaintiffs-Appellees)

7. Wilson, G. Taylor (Plaintiff-Appellee and Counsel for Plaintiffs-Appellees)

8. Wade, Grunberg & Wilson, LLC (Counsel for Plaintiffs-Appellees)

9. R. Christopher Harrison (Counsel for Defendant-Appellant)

10. Downey & Cleveland, LLP (Counsel for Defendant-Appellant)

11. Exum, John (Counsel for Defendant-Appellant)

12. John Exum Law, LLC (Counsel for Defendant-Appellant)

13. Wood, L. Lin (Defendant-Appellant)

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**.................................................................**i**

**TABLE OF CONTENTS**.................................................................**i**

**TABLE OF AUTHORITIES**...................................................................................iii

**ARGUMENT AND CITATION OF AUTHORITIES**............................................1

I.   *Defendant-appellant's argument that the district court improperly found falsity as a matter of law is properly before this court.* ...................................*1*

   A.   Defendant-Appellant has not waived his right to appeal the motion for partial summary judgment against him.................................................1

      1.  Absent a Rule 54(b) Certification under the Federal Rules of Civil Procedure, the Partial Summary Judgment is merged into the Final Judgment at the end of trial. ...................................................... 1

      2.  The law neither required any party to seek interlocutory review nor move for Rule 54(b) Certification, nor did it require the lower Court to issue a Rule 54(b) certificate sua sponte. ...................... 3

   B.   Pursuant to the Final Judgment Rule, the District Court's legal errors at summary judgment phase and later phases of the litigation are properly raised in a single appeal following the final judgment on the merits. ...............................................................................................4

   C.   Defendant-Appellant did not waive constitutional issues by "failing" to assert them in the district court.............................................5

   D.   This Court has a duty to examine the entire record where constitutional issues are implicated. ........................................................8

   E.   The district court's errors of law are what led to the infringement of Defendant-Appellant's constitutional rights...........................................12

   F.   Even if this Court rules that district court's actions were not unconstitutional, the district court's failure to follow binding precedent by itself at minimum warrants a vacatur and remand to the district Court. ...................................................................................14

      1.  The district court's failure to consider whether the Defendant-Appellant implied an allegation of undisclosed defamatory facts is a failure to follow the proper legal standard. .................................. 16

      2.  Second, the "narrow exception" under Cohen as defined by both the district court and in Plaintiffs-Appellees' response is not the correct application of the law............................................................... 19

3.  The district court did not review the facts in the light most favorable to the nonmovant. ...............................................23

II.  *The district court improperly admitted irrelevant and inadmissible evidence.*.................................................................................*24*

A.  Fulton Suit evidence was irrelevant and not probative, and Defendant-Appellant properly renewed his motion in limine objections at trial. ................................................................25

B.  The unauthenticated out-of-court statements should not have been admitted. ...........................................................................26

**CONCLUSION**...................................................................................**28**

## TABLE OF AUTHORITIES

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I...............................................................7, 11, 13, 16

U.S. Const. amend. V..................................................................7, 13, 16

U.S. Const. amend. VII. ..........................................................7, 13, 15, 16

U.S. Const. amend. XIV...................................................................passim

**STATUTES**

28 U.S.C. § 1291 ...............................................................................2, 4, 5

O.C.G.A. § 16-8-16 .............................................................................20, 21

O.C.G.A. § 16-8-16(a)..........................................................................19, 20

**RULES**

Fed. R. Civ. P. 50 ........................................................................................4

Fed. R. Civ. P. 54 ................................................................................1, 2, 4

Fed. R. Civ. P. 59 ........................................................................................4

iii

Fed. R. Civ. P. 60 ...................................................................................................4

## THE SUPREME COURT OF THE UNITED STATES

*Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242
(1960) ..................................................................................................10, 11

*Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S.
485, 104 S.Ct. 1949, 80  L.Ed.2d 502 (1984) ................................................9, 10

*Edwards v. South Carolina*, 372 U.S. 229, 83 S. Ct. 680, 9 L. Ed. 2d
697 (1963) .......................................................................................9, 10

*Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d
288 (1984) ...........................................................................................5

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L.
Ed. 2d 1 (1990).....................................................................................9

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed.
2d 686 (1964) ......................................................................................10

*Tolan v. Cotton*, 572 U.S. 650, 659-60, 134 S. Ct. 1861, 1867–68, 188
L. Ed. 2d 895 (2014) .............................................................................23

*U.S. v. Nixon*, 418 U.S. 683 (1974) ........................................................3

## THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

*Aaro, Inc. v. Daewoo International (America) Corp.*, 755 F.2d 1398,
1400 (11th Cir.1985).............................................................................3

*Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, 108
F.4th 1358 (11th Cir. 2024), cert. denied, 145 S. Ct. 1177, 221 L.
Ed. 2d 256 (2025), reh'g denied sub nom. *Prop. Matters USA, LLC
v. Affordable Aerial Photography*, 145 S. Ct. 1956, 221 L. Ed. 2d
681 (2025) ..........................................................................................15

*Choate v. Atlanta Radio, LLC*, No. 23-10282 (11th Cir. Mar. 22, 2024) ................2

*Clisby v. Jones*, 960, F.2d 925 (11th Cir. 1992).......................................4

iv

*Holt v. Ford*, 862 F.2d 850 (11th Cir. 1989) .............................................................5

*Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 919-920 (11th Cir. 2018) ............................................................................................................13

*Klaes v. Comm'r, Soc. Sec. Admin.*, 499 Fed. Appx. 895 (11th Cir. 2012) ............................................................................................................14

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ..............................................................................................................6

*Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244 (11th Cir. 2012) ..............................................................................................................2

*United States v. Brown*, 934 F.3d 1278 (11th Cir. 2019) .......................................15

*United States v. Kendrick*, 22 F.3d 1066 (11th Cir. 1994) ....................................15

*United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. Ct. 1990).........................27

*Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) ........................................6, 7

## THE SUPREME COURT OF GEORGIA

*State v. Cohen*, 302 Ga. 616, 807 S.E.2d 861 (2017)......................................19, 20

## THE COURT OF APPEALS OF THE STATE OF GEORGIA

*Green Meadows Hous. Partners, LP v. Macon-Bibb Cnty.*, 372 Ga. App. 724, 906 S.E.2d 430 (2024).....................................................................15

*Jaillett v. Georgia Television Co.*, 238 Ga. App. 885, 520 S.E.2d 721 (1999) ....................................................................................................................16

## OTHER AUTHORITIES

*Henderson v. 1400 Northside Drive, Inc.*, CIVIL ACTION FILE No. 1:13-CV-3767-TWT (N.D. Ga. June 3, 2016) ....................................................3

N.H. RSA 637:5, II(i) (2007) ...........................................................................24, 25

*Partington v. Bugliosi*, 56 F. 3d 1147 (9th Circuit) .........................................19, 20

*State v. Hynes*, 159 N.H. 187, 978 A.2d 264 (2009)....................................23, 24, 25

*United States v. Drougas*, 748 F.2d 8 (1st Cir.1984) ...............................................31

*Wade et al. v. Wood et al.*, CAFN. 2020-cv-339937 (Fulton Cnty.
    Super. Ct. Oct. 16, 2020)....................................................................................26

*Wade et al. v. Wood et al.*, CAFN. 2020-cv-339937 (Fulton Cnty.
    Super. Ct. Oct. 8, 2020).................................................................................25, 26

## <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

**I.     DEFENDANT-APPELLANT'S ARGUMENT THAT THE DISTRICT COURT IMPROPERLY FOUND FALSITY AS A MATTER OF LAW IS PROPERLY BEFORE THIS COURT.**

Plaintiffs categorically misstate the record by stating that "Defendant does not directly appeal the district court's underlying ruling on falsity." Appellees' Br., at 20. Defendant-Appellant indisputably did make this direct appeal. Defendant-Appellant explicitly listed "Opinion & Order dated March 12, 2024 (*See* Dkt. 90)" as the first of four "Orders and Judgment entered by the [district] court." DE 148, at 1. The "Opinion & Order dated March 12, 2024 ( [district court] Dkt. 90)" is the district court's order granting Plaintiffs partial summary judgment. *Id.* Defendants had likewise long ago made known their intent to preserve the issue of falsity for appeal in Exhibit D of the Consolidated pre-trial order. DE 102-5.

**A. Defendant-Appellant has not waived his right to appeal the motion for partial summary judgment against him**

    1. <u>Absent a Rule 54(b) Certification under the Federal Rules of Civil Procedure, the Partial Summary Judgment is merged into the Final Judgment at the end of trial.</u>

Because the District Court did not certify under Rule 54(b) of the Federal Rules of Civil Procedure that its order for Partial Summary Judgment is final and did not expressly determine that "there is no just reason for delay", (*Choate v. Atlanta Radio, LLC*, No. 23-10282, at *2-3

1

(11th Cir. Mar. 22, 2024) ), the order granting Partial Summary Judgment on March 12, 2024 was only appealable after the final judgment in August of 2024.

"Generally, **an order that adjudicates fewer than all claims against all parties is not final and appealable absent certification by the district court under Rule 54(b)**." *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (emphasis added); *see* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(b). Rule 54(b) provides:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court **may** direct entry of a final judgment as to one or more, but fewer than all, claims or parties **only if the court expressly determines that there is no just reason for delay**.

*Choate v. Atlanta Radio, LLC*, No. 23-10282, at *2-3 (11th Cir. Mar. 22, 2024) (emphasis added). Moreover,

> An "order granting partial summary judgment from which no immediate appeal lies is **merged into the final judgment and reviewable on appeal from that final judgment**. . . .An order granting [summary] judgment on certain issues is a judgment on those issues. It forecloses further dispute on those issues at the trial stage."

*Henderson v. 1400 Northside Drive, Inc.*, CIVIL ACTION FILE No. 1:13-CV-3767-TWT, at *4 (N.D. Ga. June 3, 2016) (emphasis added).

When "an order granting summary judgment does not terminate the action" and when a court does not "enter a final judgment on the [partial summary judgment] order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,"

2

the partial summary judgment is "an interlocutory order not appealable as of right." *Aaro, Inc. v. Daewoo International (America) Corp.,* 755 F.2d 1398, 1400 (11th Cir.1985). "The order [is] merged into the final judgment and **is open to review on appeal from [the final] judgment**." *Id.* (emphasis added).

Here, the district court did not certify under Rule 54(b) that the Partial Summary Judgment it granted to Plaintiffs was final and appealable. *See, e.g.*, DE 90, at 27. The district court did not "expressly determine[] that there [was] no just reason for delay." *See id.* The district court likewise did not direct entry of a final judgment until after trial. Defendant-Appellant explicitly included the district court's grant of partial summary judgment in his notice of appeal. DE 1-1, at ¶ 1 (district court DE 148) (enumerating "1. Opinion & Order dated March 12, 2024 (see Dkt. 90)).

> 2. The law neither required any party to seek
>    interlocutory review nor move for Rule 54(b)
>    Certification, nor did it require the lower Court to
>    issue a Rule 54(b) certificate sua sponte.

The law does not require parties to seek interlocutory review following a partial summary judgment ruling. In fact, federal public policy disfavors the judiciary having piecemeal reviews of lower court decisions. *U.S. v. Nixon*, 418 U.S. 683, 690 (1974) (acknowledging that "[t]he finality requirement of 28 U.S.C. § 1291 embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory

appeals[]"); *see also*, *Clisby v. Jones*, 960, F.2d 925, 935 (11th Cir. 1992) (expressing "deep concern over the piecemeal litigation of federal habeas petitions filed by state prisoners").

Whether a party seeks a Rule 54(b) certification is at the discretion of the party, and courts do not favor or disfavor a party's decision not to move for a Rule 54(b) Certification. *Cf. In re King*, 624 B.R. 259, 304–05 (Bankr. N.D. Ga. 2020). A district court is authorized to issue a Rule 54(b) certification *sua sponte*, but the district court has two mandatory procedural steps when making that determination. *Id.* What is not discretionary is that before there can be an interlocutory appeal of an order granting partial summary judgment, a Court must issue a Rule 54(b) certificate as described above. Similarly, motions for reconsideration are purely discretionary. *Cf.* Fed. R. Civ. P. 50, 59, 60.

Accordingly, Defendant-Appellant did not fail to preserve any of the legal issues for appeal by not moving for interlocutory review.

**B.  Pursuant to the Final Judgment Rule, the District Court's legal errors at summary judgment phase and later phases of the litigation are properly raised in a single appeal following the final judgment on the merits.**

Apart from appeals to the United States Court of Appeals to the Federal Circuit or situations in which "direct review may be had in the Supreme Court," the "courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C.A. § 1291.

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

*Id.* A final decision is generally one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Holt v. Ford*, 862 F.2d 850, 851 (11th Cir. 1989) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Also, the "final judgment rule requires **that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits**." *Flanagan v. United States*, 465 U.S. 259, 263, 104 S. Ct. 1051, 1054, 79 L. Ed. 2d 288 (1984) (internal quotes and citations omitted) (emphasis added).

### C. Defendant-Appellant did not waive constitutional issues by "failing" to assert them in the district court.

Defendant-Appellant was not required to raise the many constitutional issues until filing his notice of appeal. Defendant-Appellant is appealing, in part, the lower court's decision on the basis of its violations of constitutional rights.

To bolster their claim that Defendant-Appellant should have somehow raised issue of his numerous constitutional rights' being violated before those violations even happened, plaintiffs cite to two cases that are completely inapposite. *See* Appellees' Br., at 22. Plaintiffs-Appellees first cite to a footnote in *Midrash*

*Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1222 n.8 (11th Cir. 2004). From the footnote to which Plaintiffs refer in *Midrash*, the "equal protection argument" was not "unraised," but abandoned. *Midrash*, 366 F.3d at 1222 n.8. The plaintiffs in *Midrash* **brought the suit** on the basis of constitutional violations under 42 U.S.C. § 1983. *Id.* at 1222. In other words, the alleged constitutional violations in *Midrash* had taken place, which means that the *Midrash* plaintiffs were reasonably expected to be able to raise them. *See id.* That is an entirely different fact pattern and roadmap from this case, where the constitutional violations did not take place until the lower court's legally erroneous ruling granting Plaintiffs summary judgment on the question of falsity, thereby depriving Defendant-Appellant his First, Fifth, Seventh, and Fourteenth Amendment rights as already described in detail in Defendant-Appellant's Brief.

Plaintiffs-Appellees then cite to *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) cited within the *Midrash* footnote. Plaintiffs-Appellees' reliance on *Walker* is likewise misplaced, as their representation of *Walker*'s proposition as "rejecting unraised Fourteenth Amendment argument" is distorted and oversimplified to the point of being false. Appellees' Br., at 22. The "district court" in *Walker,* where the defendant was found not to have raised an independent claim of a due process violation, was a federal district court. *Walker*, 10 F.3d at 1572. For practical purposes, this district court functioned as court of appeals in the sense

6

that it was petitioned to review alleged violations of the *Walker* defendants'

constitutional rights. *See id.* In *Walker*, the defendant appealed his murder

conviction in an Alabama state court "to the Criminal Court of Appeals of

Alabama, which affirmed his conviction." 10 F.3d at 1571. The *Walker* defendant

then "appealed to the Alabama Supreme Court which denied Walker's petition."

*Id.* "**Upon exhausting all state remedies**, [the *Walker* defendant] filed [a] petition

for writ of habeas corpus" to review whether his constitutional rights had been

violated. *Id.* The federal district court rejected the *Walker* defendant's habeas

corpus petition with prejudice. *Id.* The *Walker* defendant then appealed the

decision of that *de facto* appeal to the United States Court of Appeals for the

Eleventh Circuit. *Id.* It was before the Eleventh Circuit where the *Walker*

defendant contended, in relevant part, that the [Alabama state criminal trial] court's

allegedly erroneous "reasonable doubt instruction violated the Due Process Clause

of the Fourteenth Amendment" from more than five years ago, and that the

Alabama state trial court's "error warrant[ed] reversal as an independent claim."

*Id.* at 1572. The Eleventh Circuit then found that because the *Walker* defendant

failed to raise **this issue in his petition for habeas corpus review** – in what would

amount to being the *Walker* defendant's **third** *de facto* effort to appeal his murder

conviction – before the federal district court, that the *Walker* defendant by law had

"failed to raise" the issue of his procedural due process violation "as an independent claim in the district court. *See id.*

In the case *sub judice*, the district court had already issued the order granting partial summary judgment to Plaintiffs after refusing Defendant-Appellant's two motions for a hearing. DE 90 (docket entry order denying DE 70, 84). The Defendant-Appellant had no way of knowing his rights had been violated until after the Court had done so in its legally erroneous order granting Plaintiffs-Appellees partial summary judgment motion.

As argued in other parts of this brief, the Defendant-Appellant was not required to file a motion for interlocutory review. Defendant-Appellant was not required to file a motion for reconsideration, and Defendant-Appellant was not required to include errors of law in his post-trial Rule 50 motion.

Accordingly, Plaintiffs have cited  no controlling legal authority to support their proposition that the Defendant-Appellant waived his right to raise constitutional arguments on appeal because he failed to make such arguments below.

### D. This Court has a duty to examine the entire record where constitutional issues are implicated.

Regarding constitutional issues, Defendant-Appellant argued how the District Court's misapplication of the law led to its improper legal conclusion to grant partial summary judgment. Defendant-Appellant did not argue, as Plaintiffs-

8

Appellees assert, that this Court needed to "conduct an independent examination of the whole record in 'assessing falsity.'" *Compare* Appellees' Br., at 15 *with* Appellant Br., at 28. Defendant-Appellant did not quote to *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 499 104 S.Ct. 1949, 1958, 80  L.Ed.2d 502 (1984), but instead cited to *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 110 S. Ct. 2695, 2705, 111 L. Ed. 2d 1 (1990), noting that *Milkovich* had quoted *Bose Corp.*

*Milkovich* pertained to far more than the issue of actual malice. To clarify, the Court has a duty to examine the entire lower court record where constitutional issues are implicated.

Plaintiffs assert: "Though questionable – *Bose Corp.* and its progeny have been applied only to the issue of actual malice – Plaintiffs do not contest it because the law remains ostensibly unsettled, and it is academic because nothing in the record supports Defendants' appeal." Appellees' Br., at 15.

Regardless of whether *Bose Corp.* and its *progeny* might have applied largely to issues of actual malice, federal appellate courts had long before *Bose Corp.* conducted independent examinations of the trial court record to ensure no infringement of constitutional rights, and not just First Amendment issues within the context of actual malice in defamation cases. *See*, *e.g.*, *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S. Ct. 680, 683, 9 L. Ed. 2d 697 (1963);

9

*Blackburn v. Alabama*, 361 U.S. 199, 205, n. 5, 80 S.Ct. 274, 279, 4 L.Ed.2d 242 (1960); To be clear, *Bose Corp.* cites to *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S. Ct. 710, 729, 11 L. Ed. 2d 686 (1964), which indeed created the actual malice standard. *New York Times* cites *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S. Ct. 680, 683, 9 L. Ed. 2d 697 (1963), as its basis for an "independent examination of the entire record… so as to assure [themselves] that the judgment does not constitute a forbidden intrusion on the field of free expression." *New York Times*, 376 U.S. at 285. *Edwards* had nothing to do with actual malice or defamation. 372 U.S. at 229-31. *Edwards* concerned 187 petitioners who were wrongfully "convicted in a magistrate's court in Columbia, South Carolina for the commonlaw crime of breach of peace." *Id.* at 229-30. The Supreme Court of the United States "granted certiorari, 369 U.S. 870, 82 S.Ct. 1141, 8 L.Ed.2d 274, to consider the claim that these convictions cannot be squared with the Fourteenth Amendment of the United States Constitution." *Id.* at 230. It was also "clear to us that in arresting, convicting, and punishing the petitioners under the circumstances disclosed by this record, South Carolina infringed the petitioners' constitutionally protected rights of free speech, free assembly, and freedom to petition for redress of their grievances." *Id.* at 234–35 (emphasis added); see also, *Blackburn v. Alabama*, 361 U.S. 199, 205, n. 5, 80 S.Ct. 274, 279, 4 L.Ed.2d 242 (1960) ("It is well established, of course, that

10

although this Court will accord respect to the conclusions of the state courts in cases of this nature, we cannot escape the responsibility of scrutinizing the record ourselves.")

The appellate courts' duty to examine the entire record for constitutional rights infringements is not even limited to First Amendment issues. *See Blackburn*, 361 U.S. at 205, n. 5. *Blackburn* implicated the due process clause of Fourteenth Amendment of the United States. *Id.* at 200. In *Blackburn*, the Supreme Court of the United States reversed a robbery conviction after determining from its examination of the whole record that the defendant's confession had been involuntary. *See id.* at 211.

In summary, the law is far from "unsettled" that the scope of what triggers a federal appellate court's independent review of the lower court record is broader than the "issue of actual malice." *Contra* Appellees' Br. at 15. The law is likewise far from "academic," as the factual record in the district court is replete with violations of Mr. Wood's First, Fifth, Seventh, and Fourteenth Amendment rights for the reasons already explained in the Defendant-Appellant's Brief. *See id.*

Accordingly, the Court has a duty to review the entire record to ensure no infringements of the Defendant-Appellant's constitutional rights.

11

### E. The district court's errors of law are what led to the infringement of Defendant-Appellant's constitutional rights.

Defendant-Appellant has not contended that as a general matter, summary judgments or partial summary judgments violate constitutional rights. Rather, Defendants argue that the District Court's errors of law in making its ruling are what amounted to the infringement of Defendant-Appellant's constitutional rights. The District Court's legally erroneous conclusion in turn deprived Defendant-Appellant of the various constitutional rights the Defendant-Appellant has already spelled out extensively in his initial brief.

Defendant-Appellant could not have reasonably anticipated the different ways in which the District Court would misapply the law in its erroneous conclusion of law that infringed upon Defendant-Appellant's constitutional rights until after the fact. Plaintiffs-Appellees' contention that Defendant-Appellant should have somehow made these arguments during the summary judgment phase before the lower court even created the issue with its improper grant of partial summary judgment is both unfair and unreasonable. As for what the law required after the grant of partial summary judgment, Defendant-Appellant was only required to raise this issue on appeal once there was a final judgment in which the partial summary judgment would be merged. Part (I)(A), *supra*.

12

Plaintiffs cite *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 919-920 (11th Cir. 2018) for the proposition that "summary judgment does not violate the seventh amendment." Appellees Br., at 24. What *Jefferson* ruled to be "nonsense" was either the general proposition that summary judgment violated the Seventh Amendment in discrimination cases, or the "radical argument that summary judgment is always unconstitutional." 891 F.3d at 919. *Jefferson* does not apply to Defendant-Appellant's argument because Defendant-Appellant has not argued that summary judgment by itself violates the Seventh Amendment.

Plaintiffs' citation to *Zivojinovich v. Barner*, 525 F.3d 1059, 1066 (11th Cir. 2008) is likewise inapplicable because Defendant-Appellant did not make the general argument that the district court could never substitute a "hypothetical reasonable jury could do for what a real jury actually would do." *See* Appellees' Br. at 24. All Defendant-Appellant is arguing is that this particular district court's legally erroneous ruling on partial summary judgment had a downstream prejudicial effect of infringing on his Seventh Amendment rights.

Plaintiffs claim that "Defendant-Appellant's Fifth and Fourteenth Amendment 'contentions are meritless' as well." Appellees' Br., at 24. While Defendant-Appellant "participated" at whatever phase he was allowed, Defendant-Appellant was "DENIE[D]" an opportunity to be heard before the ruling on

13

summary judgment. DE 90 (docket entry order denying Defendant-Appellant's two motions for oral argument).

As to the Plaintiffs-Appellees' response to Defendant-Appellant's First Amendment argument, Plaintiffs-Appellees cite to no authority requiring Defendant-Appellant to specify his "penalized speech." Appellees' Br., at 24. Defendant-Appellant is facing a $4.5 million judgment over speech that he made. DE 140.

### F. Even if this Court rules that district court's actions were not unconstitutional, the district court's failure to follow binding precedent by itself at minimum warrants a vacatur and remand to the district Court.

The district court committed several purely legal errors in its legal analysis that culminated in its improper grant of partial summary judgment on the question of liability.

This Cout has held that the failure to apply the appropriate legal standard or binding precedent by itself requires reversal and remand to the district court for reconsideration. *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 Fed. Appx. 895, 897 (11th Cir. 2012) (holding that because an administrative law judge had not followed the requirements under "20 C.F.R. § 404.1594(c)(1) **and [the Eleventh Circuit Court's] precedent**," that the administrative law judge "**failed to follow the proper legal standard**," and that the Eleventh Circuit "**must reverse and remand**" so that "the correct standard" can be applied) (emphasis added); *see also*,

14

*Green Meadows Hous. Partners, LP v. Macon-Bibb Cnty.*, 372 Ga. App. 724, 733, 906 S.E.2d 430, 440 (2024), cert. denied (Jan. 28, 2025) (vacating a finding from the trial court after determining that "the **trial court failed to apply the relevant legal standard** in its determination that [the defendant] was liable …", and also "remanding the case for further consideration in a manner consistent with this opinion[]") (emphasis added). Courts in the Eleventh Circuit are "duty bound to apply the correct law." *Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, 108 F.4th 1358, 1362 (11th Cir. 2024), cert. denied, 145 S. Ct. 1177, 221 L. Ed. 2d 256 (2025), reh'g denied sub nom. *Prop. Matters USA, LLC v. Affordable Aerial Photography*, 145 S. Ct. 1956, 221 L. Ed. 2d 681 (2025) In other words, even if the Defendant-Appellant wanted, Defendant-Appellant could not "waive the application of the correct law or stipulate to an incorrect legal test." *Id.* (internal citations and quotes omitted).

Also, "[i]f a district court applies an incorrect legal standard in reaching a factual conclusion, the resulting finding is not insulated by the clear-error standard." *United States v. Brown*, 934 F.3d 1278, 1307 (11th Cir. 2019). Lastly, "vacatur and remand are warranted when '[the United States Court of Appeals for Eleventh Circuit] cannot say' whether an incorrect legal standard 'affect[ed] or influence[d] the district court's [factual] conclusion.'" *Id.* (citing *United States v. Kendrick*, 22 F.3d 1066, 1069 (11th Cir. 1994)).

1.  <u>The district court's failure to consider whether the Defendant-Appellant implied an allegation of undisclosed defamatory facts is a failure to follow the proper legal standard.</u>

As Defendant-Appellant explained in its initial brief, the district court failed to consider whether the Defendant-Appellant's allegedly defamatory posts implied undisclosed defamatory facts. This oversight by the district court is far from "irrelevant," as Plaintiffs-Appellees falsely suggest. Appellees' Br., at 35 n.22. To state the context more fully,

> If **an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts**. Thus, the Restatement notes that "a statement of [opinion] is actionable **only if it implies the allegation of *undisclosed* defamatory facts** as the basis for the opinion.

*Jaillett v. Georgia Television Co.*, 238 Ga. App. 885, 890, 520 S.E.2d 721, 726 (1999) (emphasis added). In *Jaillet*, the court upheld the trial court order granting the defendant summary judgment because nothing from the publication in question suggested that the defendant had was aware of any defamatory facts he had not already disclosed. *Id.*

> [N]othing **in the broadcast suggests to the viewer that either [the defendant] or Mrs. Dillard was aware of any defamatory facts other than those disclosed in the broadcast**—i.e., that the Ace & A repairman had incorrectly told Mrs. Dillard she needed to replace the air conditioning unit.

*Id.*

16

Plaintiffs-Appellees' Response misleads the Court with its selective quote from *Partington v. Bugliosi*, 56 F. 3d 1147, 1156 (9th Circuit). Appellees' Br., at 36. The full quote from which Plaintiffs-Appellees select their misleading snippet reads as follows:

> [T]he District of Columbia Circuit has noted that " '[b]ecause the readers understand that such supported opinions **represent the writer's interpretation of the facts presented**, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.' "

*Id. Partington* says nothing about the "the facts presented" being "a series of true facts." *Id.*

Defendant-Appellant is not "ignoring the requirement that disclosures be truthful to avoid potential liability." *Contra* Appellees' Br., at 35. Defendant-Appellant is merely pointing out that the district court ignored black letter law, and Plaintiffs-Appellees Response fails to answer for it.

Plaintiffs-Appellees' Response fails to clarify how Defendant-Appellant based his allegedly defamatory opinions on facts that he had not already disclosed within his allegedly defamatory communications. Appellees' Br., at 35. More importantly, Plaintiffs-Appellees' Response fails to demonstrate how the district court actually included the Defendant-Appellant's implication of the existence of undisclosed defamatory facts in his partial summary judgment ruling.

17

Plaintiffs-Appellees might have their own subjective interpretation of what Defendant-Appellant's stated facts within Defendant-Appellant's Telegram posts meant. Plaintiffs-Appellees might have their own subjective opinion as to whether additional facts should have been included in the Defendant-Appellant's Telegram publications, but that does not cure the district court's failure to apply the relevant legal framework required by law when assessing Defendant-Appellant's liability.

Neither the district court's summary judgment ruling, nor Plaintiffs-Appellees' filings referenced within their Response brief, make any explicit reference to any of the Defendant-Appellant's Telegram publications as implying allegations of undisclosed defamatory facts. Plaintiffs-Appellees' Response impliedly concedes that the district court never explicitly considered the implied allegation of undisclosed defamatory facts. Appellees' Br., at 34-37.

Plaintiffs' futile attempt to argue how the Defendant-Appellant somehow *might* have implied undisclosed defamatory facts when making his posts about Plaintiffs-Appellees does not make up for the fact that the district court completely ignored this required component of its legal analysis altogether. *See*, Doc. 90, at 13-15. Plaintiffs-Appellees have not even attempted to illustrate exactly how the Court found that the Defendant-Appellant "openly withheld bases" for his stated opinions. Appellees' Br., at 34-37. In fact, despite their apparent efforts, they fail to do so themselves. For example, the fact that Defendant-Appellant stated that

18

"some other lawyers agree with his opinion", (Appellees' Br., at 37), does not imply anything about Plaintiffs-Appellees, let alone anything defamatory. It certainly did not imply that Defendant-Appellant was withholding from his Telegram audience any part of any discussion he might have had with any of the lawyers sharing his opinion.

The district court failed to include in its analysis the question of whether the Defendant-Appellant was withholding any undisclosed facts or implying any undisclosed allegations of defamatory facts. DE 90, at 13-15. Therefore, reversal and remand is warranted on this issue alone.

> 2. Second, the "narrow exception" under *Cohen* as defined by both the district court and in Plaintiffs-Appellees' response is not the correct application of the law.

Plaintiffs' argument about the District Court's "read[ing] dicta in *State v. Cohen,* 302 Ga. 616, 807 S.E.2d 861 (2017) as identifying 'a narrow exception' when the threatened litigation is 'based on intentional falsehoods or on knowingly frivolous claims,'" (Appellees' Resp. Br., at 29), is irrelevant and misleading.

The *Cohen* court clearly acknowledged the possibility O.C.G.A. § 16-8-16(a) contemplates the potential possibility that "threats" of public litigation could rise to the level of extortion.

> … because any threat to "[d]isseminate any information tending to subject [another] person to hatred, contempt, or ridicule or to impair his credit or business repute" could, in theory, amount to extortion

19

under OCGA § 16-8-16 (a) (3), the language of OCGA § 16-8-16 could be read to be broad enough to include "threats" of public litigation as unlawful and extortionate actions that could subject a person to criminal liability under the statute.

The key factual distinction in the instant case is that Plaintiffs' threat to file the original Fulton County lawsuit was not a "mere threat to sue" or "a threat of litigation, [which] by itself, is not unlawful." *Cohen*, 302 Ga., at 624. Instead, the language and allegations contained within the threatened lawsuit, specifically allegations that would have subjected the Defendant-Appellant to embarrassment and ridicule, conclusively prove that the threat to sue here did, in fact, rise to the level of extortion.

Georgia law (and applicable federal law) does not definitively say that threats to sue can *never* constitute extortion under any circumstances. Moreover, other jurisdictions such as New Hampshire have explicitly ruled that they "cannot conclude, as a matter of law, that there are no circumstances under which a threat to sue would constitute extortion." *State v. Hynes*, 159 N.H. 187, 194–95, 978 A.2d 264, 270–71 (2009).

Of note, Georgia and New Hampshire have substantially similar "Theft by Extortion" statutes, which makes the New Hampshire Supreme Court's ruling in *Hynes* on the question of a threat to sue rising to the level of extortion more on point than any of the cases listed in Plaintiffs' Response Brief. Similar to O.C.G.A. § 16-8-16, N.H. RSA 637:5, II(i) (2007) provides that "extortion occurs when a

20

person threatens: … (d) …to expose [a person] to hatred, contempt or ridicule; or …(i) do any other act … which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships."

The analyses in cases such as *United States v. Pendergraft*, 297 F.3d 1198, 1205 (11th Cir. 2002), cited by Plaintiffs-Appellees on p. 29 in their brief, "consider the wrongful means – the threat – independent from the wrongful objective – taking of the property." *Hynes*, 159 N.H. at 195. By contrast, "RSA 637:5, II(i) does not make such a distinction. Rather, as discussed above, it more broadly considers the consequences of the threat, both to the person making it and to its intended recipient." *Id. Hynes* also makes clear that "[a] **wrongful purpose does not necessarily make the means threatened to accomplish it wrongful**." *Id.* at 194 (emphasis added). Similarly, O.C.G.A. § 16-8-16(a) also "more broadly considers the consequences of a threat, both to the person making it and to its intended recipient." *Compare Hynes*, 159 N. H. at 194-95 *and* N.H. RSA 637:5, II(i) *with* O.C.G.A. § 16-8-16(a).

Here, a jury should have been allowed to determine if Plaintiffs-Appellees' "purpose" was to humiliate Defendant-Appellant, unless Plaintiffs-Appellees could extort him out of double or more than the amount the parties had agreed under the terms of the March 17, 2020 Settlement Agreement & General Release. It does not

21

matter that Plaintiffs' means of doing so was by only explicitly threatening to file suit, an act otherwise not wrongful.

Again, Plaintiffs were threatening to file a lawsuit which ultimately prompted the Superior Court of Fulton County of Fulton County, Georgia ("Fulton Court") on Oct. 8, 2020 to seal the record in its *Order Pursuant To OCGA 9-11-12(F)* because of its "redundant, immaterial, impertinent or scandalous matter." Dkt. 20, *Wade et al. v. Wood et al.*, CAFN. 2020-cv-339937 (Fulton Cnty. Super. Ct. Oct. 8, 2020) ("Fulton Suit").

The Fulton Court's *Order Denying Motion For Expedited Ruling* on Oct. 16, 2020 does say that the Oct. 8, 2020 *Order Pursuant To OCGA 9-11-12(F)* had been "prophylactic and was not intended to indicate a decision by the Court as to the legal sufficiency of specific legal allegations in the filings." Fulton Suit, Dkt. 29. The Fulton Court further noted in this order that *Defendants' Motion for Expedited Ruling on their Motion to Strike* had also contained a motion to dismiss. *Id.*

Even if the Fulton Court indeed issued its order *sua sponte*, it was only the Defendant-Appellant and his codefendant in the Fulton County litigation who filed a motion to strike – not Plaintiffs-Appellees. Dkts. 15, 17, Fulton Suit (Oct. 8, 2020), The Fulton Court reasoned that the "materials are voluminous and not reasonably subject to redaction." Dkt. 20, *supra.* Plaintiffs-Appellees have not –

because they cannot – specify anything submitted by Defendant-Appellant or his codefendant in the Fulton County litigation that would rise to the level of "redundant, immaterial, impertinent or scandalous matter."

That the Fulton Court might have taken a "prophylactic" measure without the defendants' even having to move for any of the provisions in Plaintiffs-Appellees' Fulton Suit complaint to be stricken is even stronger evidence that Plaintiffs' threat to file the Fulton Suit was more than a mere threat to sue.

Because the district court erroneously applied the narrow exception within *Cohen*, reversal and remand to the district court is once again warranted.

3. <u>The district court did not review the facts in the light most favorable to the nonmovant.</u>

Failure to view the evidence at summary judgment in the light most favorable to the nonmoving party is reversible error. *Tolan v. Cotton*, 572 U.S. 650, 659-60, 134 S. Ct. 1861, 1867–68, 188 L. Ed. 2d 895 (2014) (vacating summary judgment and remanding for further proceedings after concluding that the "court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion.")

Here, in granting plaintiffs' motion for partial summary judgment, the district court failed to view the evidence in the light most favorable to the

nonmovant. Defendant-Appellant has not presented any new "evidence" that was not before the district court. Appellant Br., at 33-34.

Defendant-Appellant is not attacking the margins by pointing out the district court's disregard for the Defendant-Appellant's reasonable – not speculative or conjectural – inference drawn as to the settlement demand equaling or exceeding $1.5 million. *Id.* While not the only example of the Judge's failure to view the facts in the light most favorable to the nonmovant, it is perhaps the most glaringly obvious reason his ruling should once again be reversed and remanded on this count. *See id.*

## II. THE DISTRICT COURT IMPROPERLY ADMITTED IRRELEVANT AND INADMISSIBLE EVIDENCE.

The district court abused its discretion with its repeated admissions of irrelevant, cumulative and prejudicial evidence. The substantial prejudice was the $4.5 million verdict that the jury awarded to Plaintiffs-Appellees, despite Plaintiffs-Appellees' not having to prove any of the $3.75 million in actual damages that the jury awarded them. The Court's erroneous ruling of Partial Summary Judgment had already prejudiced the Defendant-Appellant in the eyes of the jury by creating the false impression amongst the jury that the Defendant was liable, and that he must therefore pay some amount in damages. The Plaintiffs-Appellees never proved any actual damages, however.

**A. Fulton Suit evidence was irrelevant and not probative, and Defendant-Appellant properly renewed his motion in limine objections at trial.**

Plaintiffs-Appellees cite to no authority requiring Defendant-Appellant to object to specific statements or exhibits before they are even tendered for admission. As to the Fulton Suit, Defendant-Appellant properly made all possible objections in the pre-trial and properly renewed them at trial.

Plaintiffs-Appellees falsely suggest that Defendant-Appellant made "no effort to satisfy the standard" of preserving his renewed objections from the motion in limine at trial. *See* Appellees' Br., at 38-9. Plaintiffs-Appellees state that Defendant-Appellant "identified two instances where he contends Fulton Litigation was improperly admitted." Appellees' Br., at 39. That statement is false, as Defendant-Appellant identified at least three objections on the subject matter of fraud and contract breach on just that page. *Compare* Appellees' Br., at 39-40 *with* DE 25, at 40. Defendant-Appellant's use of "*e.g.*" in its citation to the trial court transcripts clearly demonstrates that at trial alone there were **at least those three blocks of lines** containing objections from the respective transcripts containing objections to the then unadjudicated fraud and contract breach evidence from the Fulton Suit. Appellant Br., at 40. Plaintiffs-Appellees themselves then identify an additional six. Appellees' Br. at 39-40. Even that is not all, as Plaintiffs-Appellees also intentionally overlook  the cumulative objection Defendant-Appellant raised

25

regarding the various forms of inadmissible evidence from February of 2020, which the court overruled. DE 159, at 197:16-21.

Defendant-Appellant did not concede admissibility of this evidence, as Defendant-Appellant did not "preemptively" introduce any of the evidence to which he had objected on motion in limine. Defendant-Appellant would have never entered any such evidence at all if he had not been forced to make seven objections in Plaintiffs-Appellees' Opening statement, at least three of which pertained to the Fulton Suit evidence.

Despite Plaintiffs-Appellees' claims to the contrary, Defendant-Appellant made a substantial showing that the Fulton Suit was irrelevant and caused substantial prejudice. *See*, *e.g.*, Appellant Br., at 38-54; Doc. 140.

### B. The unauthenticated out-of-court statements should not have been admitted.

Whatever the District Court admitted as evidence became the focus of Plaintiffs' claim for damages. Plaintiffs-Appellees still do not show that they authenticated the out-of-court statements, as required under Rule 901 of the Federal Rules of Evidence and the established precedent defined on pages 50-51 of Appellant's Brief. This includes but is not limited to the largely anonymous Telegram messages or reply comments, as well as emails from the email addresses of individuals who appear to be deceased.

Plaintiffs testified that they either took screenshots of the replies on Defendant-Appellant's Telegram reply channel, or received such messages on Telegram or via email. Appellees' Br., at 53-4. Plaintiffs-Appellees' cite to no authority showing that their own self-serving testimony would suffice as "circumstantial evidence" under *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. Ct. 1990), which they contend would authenticate what their "evidence" purports to be. Appellees' Br., at 52-3. The purported "temporal connection" from *United States v. Drougas*, 748 F.2d 8, 26 (1st Cir.1984) to which *Smith* cites was only one of the criteria necessary establish circumstantial evidence. 748 F.2d 8, 26. To establish the temporal connection, the government called a third-party witness with no apparent interest in the litigation to testify. *See id.* at 26. Plaintiffs-Appellees are not third parties, and Plaintiffs-Appellees have $4.5 worth of interest in this litigation. DE 140.

Defendant-Appellant had no reasonable opportunity to question, explore, or rebut the authenticity of these claims. Defendant Appellant was limited to what his counsel could do in real-time during the Court proceeding itself, which was to conduct hasty online background checks via the email addresses of less than a handful of the people Plaintiffs-Appellees alleged to be threatening them. Defendant-Appellant's counsel indeed was able to determine that two of the email

27

addresses were linked to people who had died before supposedly sending the communications to Plaintiffs-Appellees.

That such questions were raised on such short notice should again demonstrate the district court's abuse of discretion in allowing such unverified communications to be admitted into evidence. Whether the evidence of communications from dead people was not admissible as "evidence" only because it reached the ears of the jury from the questions raised by Defendant-Appellant's counsel is irrelevant to the question of whether the district court abused its discretion in admitting all these and the countless unverified messages from Telegram.

## **CONCLUSION**

For all of the foregoing reasons, Defendant-Appellant L. Lin Wood reiterates his request that this Court reverse the district court's Opinion and Order dated Aug. 20, 2024, which includes but is not limited to the March 12, 2024 Order Granting Partial Summary Judgment merged within it.

Dated:  March 26, 2026

Respectfully submitted,

/s/ R. Christopher Harrison
R. Christopher Harrison, Esq.
**DOWNEY & CLEVELAND, LLP**
288 Washington Avenue

/s/ John P. Exum, Jr., Esq.
John P. Exum, Jr., Esq.
**JOHN EXUM LAW, LLC**
2625 Piedmont Rd NE, Ste 56-480

Marietta, GA 30060-1979                  Atlanta, GA 30324
Tel: 770-422-3233                        Tel: 252-560-5325
Email: harrison@downeycleveland.com      Email: jexum@johnexum.com

ATTORNEYS FOR DEFENDANT-APPELLANT

NO. 24-12999

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE 11TH CIRCUIT

_____

L. LIN WOOD & L. LIN WOOD, P.C.,
Defendant–Appellant,

v.

NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON
Plaintiffs-Appellees–Appellees.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains no more than 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

/s/ R. Christopher Harrison
R. Christopher Harrison, Esq.
**DOWNEY & CLEVELAND, LLP**
288 Washington Avenue

/s/ John P. Exum, Jr., Esq.
John P. Exum, Jr., Esq.
**JOHN EXUM LAW, LLC**
2625 Piedmont Rd NE, Ste 56-480

Marietta, GA 30060-1979              Atlanta, GA 30324
Tel: 770-422-3233                    Tel: 252-560-5325
Email: harrison@downeycleveland.com  Email: jexum@johnexum.com

ATTORNEYS FOR DEFENDANT-APPELLANT

IN THE UNITED STATES COURT OF APPEALS
FOR THE 11TH CIRCUIT

L. LIN WOOD & L. LIN WOOD, P.C. ,
Defendant–Appellant,

v.

NICOLE JENNINGS WADE,
JONATHAN D. GRUNBERG, and
G. TAYLOR WILSON
Plaintiffs-Appellees–Appellees.

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I am counsel for Appellants and that on this day I have

served opposing counsel with a copy of this brief.

Respectfully submitted this 26th day of March, 2026.

| | |
|---|---|
| /s/ R. Christopher Harrison | /s/ John P. Exum, Jr., Esq. |
| R. Christopher Harrison, Esq. | John P. Exum, Jr., Esq. |
| **DOWNEY & CLEVELAND, LLP** | **JOHN EXUM LAW, LLC** |
| 288 Washington Avenue | 2625 Piedmont Rd NE, Ste 56-480 |
| Marietta, GA 30060-1979 | Atlanta, GA 30324 |
| Tel: 770-422-3233 | Tel: 252-560-5325 |
| Email: harrison@downeycleveland.com | Email: jexum@johnexum.com |

ATTORNEYS FOR DEFENDANT-APPELLANT